Curia, per Earre, J.
The main question arising here, is, whether a verbal stipulation, made on the transfer, by delivery, of a personal chattel, under a contract of sale, that the right of property shall remain in the vendor, or person transferring possession, until the price agreed on be paid, and then pass absolutely to the purchaser, is consistent with the rules of law; and will enable the vendor to maintain trover, against an officer who sells the chattel, under process, as the property of the person in possession. The plaintiff claims under such a reservation of title; and on the trial below, obtained a verdict, .under the instructions of the court, upon the authority of Reeves v. Harris, and Bailey v. Jennings, 1 Bail. 563. Those cases being frequently questioned at the bar, and their soundness being denied by some members of the court, it has been deemed advisable to take the sense of all the judges. The result of their judgment I am now to pronounce. And here, perhaps, it would be quite enough, to refer to the opinion of the court in the cases cited by Mr. Justice Colcock, as furnishing an ample vindication of the principle involved, as well as of its application to those cases. But in the discussion here, some views have been taken, and our researches, have enabled us to present some additional authorities, which will probably illustrate the principle, and strengthen the authority of those cases. The great danger which seems to be apprehended, from the rule of property re-cognised in these cases is, that the persons in possession, under *423 such conditional transfer, will acquire a false credit, on the faith of it; and if the possession is not held to be evidence of title, creditors will be defrauded. But it is a remarkable coincidence in all these cases, beginning with Dupree v. Harrington Harp. R., 391, down to the case under consideration, that neither the rights of subsequent creditors, nor the rights of subsequent purchasers without notice, are at all involved. In the first case, Kendrick, the defendant’s intestate, was a subsequent purchaser with notice of the title ; and in all the other cases, the property was sold under process, for debts subsisting at the time of the transfer. In the case of Dupree v. Harrington the reservation was in writing; and that is supposed to make a great difference. I confess myself unable to perceive on what ground. It is at last, but an agreement between the parties, proved in one case by writing, and in the other by witnesses, that the sale is not absolute, that the title does not pass by the delivery, and is not to vest in the purchaser, until he performs the condition of payment. A sale is a transfer of chattels from one person to another, for a valuable consideration; and if it is competent for parties to perfect a sale, by actual payment of the price, on one hand, and absolute delivery of the chattel on the other; surely it is equally competent for them to modify the terms of the sale, to suit their own views and interests ; and if the purchaser obtains delivery by giving a promise, or security to pay, at a future day, the vendor may strengthen the security, and qualify the delivery, by annexing as a condition, that the title does not pass by it, and shall not vest until payment of the price. If the purchaser accepts the delivery on such terms, who shall gainsay it ? Who has a right to say he shall not be bound by the terms of his agreement 1 The ready answer that creditors may be defrauded; that the purchaser may acquire a false credit and therefore a verbal reservation of title is void, seems very unsatisfactory. I think it cannot be doubted, that such a reservation, whether by writing, or by parol, is binding on the parties, and therefore is not void, Rann v. Hughes, 7 T. R., 346, n. All contracts concerning personal chattels are as valid by parol as in writing; and in fact there is no such division of contracts, except as to those which are re *424 quired to be in writing by statute. Such a verbal stipulation, as we are considering, may be good between the parties, and void as to future creditors and subsequent purchasers. As neither are now concerned, the only question is, whether it be void, as to subsisting creditors. , I cannot grasp the principle, on which they may claim to avoid it, whether written or verbal. There is no statute requiring such a paper to be recorded; and so far as concerns actual notice, a verbal reservation on delivery, in presence of witnesses, is far more effectual than a written acknowledgment, without witness, and put in the pocket of the seller. But so far as relates to subsisting creditors, it is not put on the ground of notice. It is said possession is evidence of title ; the seller puts the purchaser in possession, and creditors, and others, have a right to treat the property as his, whatever may be the verbal stipulation between themselves. But possession is only prima facie evidence of title, as to third persons and wrong doers; it is a principle intended to protect the person in possession, and not to enable him to defraud the owner, or others to do it'through his means. I can understand that the right of property draws to it the possession; but it seems a novelty to say, that possession draws to it the right of property. The subsisting creditors have neither a legal, nor meritorious claim to subject such property to their debts. They have not credited him on the faith of it. The chattels, merchandise or money, which they have furnished him, and for which they have given him credit, have not been exchanged, or paid for it. It is a new acquisition, which théy have not aided him to make, and of which, as his title is yet imperfect, they have no legal right to deprive him. Such a reservation is sometimes called a verbal mortgage ; but it has no likeness of a mortgage. No doubt if the sale were at first absolute, and the delivery without qualification, a subsequent verbal agreement, that the right of property should revest in the seller, on non-payment, or the non-performance of any other condition, would be void, the purchaser remaining in possession. In that case a written instrument, of some kind, would be necessary to reconvey the title ; the delivery of which would be equivalent to a re-delivery of the property ; and then it would be a *425 common mortgage. The predicate of all the reasoning here is, that there is no actual and absolute sale ; but only a species of bailment, for use, to become property, on the payment of the purchase money, at a day certain. So far as regards the effect of this proceeding, upon present or future creditors, there is no difference between it, and an unrecorded mortgage ; or a loan from year to year, or a hiring, where the contract is not in writing. In all these instances, the possession is in one, and the title in another. In all of them, men may give credit to the former, on the faith of the property in his hands ; or representing it as his own, he may make sale of it to a stranger.' Why may not the property be thus wrested from the lawful owners, in all these instances, on the same supposed rule that possession is evidence of title, so much misapplied in the case we are considering ? As to subsisting creditors, I have endeavored to show, that they cannot establish their claim on the ground of fraud; and independently of that ground, that the reservation, whether verbal or written, if good between the parties, is good as to all others. That subsequent creditors, and purchasers without notice, may be liable to be defrauded is not questioned; and so are they liable to suffer from innumerable transactions concerning property, that are perfectly fair and legal in their inception. It is impossible for the legislature, or for counts of justice, to guard men against all fraud, in a commercial age and country, where cupidity is stimulated by a thousand motives, and is rewarded, in proportion to the zeal of its pursuits, and the variety of its enterprises. It is enough that we can generally relieve honest dealers, against actual fraud, after it has been practised upon them, by a liberal application of the principles of the common law. It is upon these principles, that the plaintiff rests his claim, in this case, to be protected in his right of property. I think the view I have taken of the law of sales, will be found supported by. the current of authorites, as well as sustained by sound principle. A voluntary and absolute delivery .under contract of sale vests the title; “ but if,” says Ch. Kent, “ the delivery'be accompanied with a declaration, on the part of the seller, that he should not consider the goods as sold, until security be given, the sale is conditional, *426 and the property does not pass by delivery, as between the parties,” and cites the case of Hussey v. Thornton, 4 Mass. Rep. 405, and Marston v. Baldwin, 17 Mass. Rep. 606. Pursuing the same subject, he adds, “ where there is a condition precedent, attached to a contract of sale, the property does not vest in the vendee on delivery, until he performs the condition, or the seller waives it; and the right continues in the vendor, even against the creditors of the vendee,” and cites Barrett v. Pritchard, 2 Pick. 512. And to the same point will be found the case of Ward v. Shaw, 7 Wend. 404. In this case the result may be thus stated: — In regard' to the sale of chattels, where any thing remains to be done, before the sale can be considered complete, whether by the vendor, or vendee, as .between the parties themselves, the right of property does not pass, although the chattel is placed in the hands of the vendee. In all these cases the contest was between the original owner and vendor, and the creditors of the vendee in possession, enforcing their demands by process; and in all the cases, except Barrett v. Pritchard, the condition of the delivery was verbal. The case of Marston v. Baldwin is very similar to this. It was an action for rum, and other goods, sold by the plaintiff to one Holt, and delivered to him, but on the condition that the property was not to vest in Holt, until he should pay 150 dollars in part payment. Holt paid 75 dollars only, and the defendant, as deputy sheriff, attached the goods as Holt’s, for a previous debt of one Babcock. And it was’held that the plaintiff might maintain the action, without rescinding the contract, or refunding the 75 dollars. These cases were decided in courts of the highest authority in the U. States. The principles have the sanction of C. J. Parsons, and Chancellor Kent. They cannot be regarded, therefore, as innovations on the common law. In 2 Barn. & Aid. 330, n., will befound the case of Bishop v. Shillito — trover for iron. The iron was delivered under a contract that certain bills outstanding, against the plaintiff, should be taken up. After a part of the iron had been delivered, and no bills had been taken out of circulation, the plaintiff stopped the further delivery, and brought trover for what he had delivered. The court held, that this was only a conditional delivery; and the *427 condition being broken, the plaintiff might bring trover. If there be no difference in principle, between a condition in writing, and a verbal one, the case of Dupree v. Harrington is a direct authority. I have tortured my faculties to conceive a ground of difference, except only as to the facilty and mode of proof. In point of openness, fairness, and notice to the public, a conditional delivery before witnesses, is least objectionable.
In regard to subsequent creditors, it will be time to provide for them, when they complain. It will then, as in other cases of like kind, be a question whether in fact they are defrauded, and will depend on the circumstances, going to prove fairness or the reverse. If a very extended credit be given, without good reason, or a credit disproportioned to the value of the property, especially if it consist of merchandise, or other articles usually kept for sale, or of things to be consumed in the use; or if after the condition broken, the vendor permit the vendee to remain, for a long time, in possession without enforcing his claim, or 'retaking possession, these would be badges of unfairness. So it is said by Ch. Harper, in Gist v. Presley, 2 Hill, C. C. 328, in case of a mortgage, after condition broken, “ a great degree of neglect in leaving the property in the mortgagor’s possession, might be a badge of fraud.” Whenever the vendor’s right of property shall come in conflict with the claims of those, who become creditors after the transfer of possession, then the court will endeavor so to modify the rule, or restrict its operation, as to protect the rights of bona fide creditors, who may have trusted the supposed purchaser, on the faith of the property in his possession.
The form of the action is not discussed in the two cases referred to; and a technical objection has been raised here, that the debtor being in possession by delivery, and entitled to retain it until the- time of payment, the plaintiff has not that right of immediate possession necessary to maintain trover. In this case the time of payment was passed. The right of property being in the plaintiff, draws to it the constructive possession. The possession of the vendee, who after condition broken, is tenant at will, is the possession of the plaintiff, on which I think he may maintain trover. The *428 sale by the defendant was a conversion. Reeves v. Harris, and Bailey v. Jennings, were both actions of trover, and this question could hardly have been overlooked. A majority of the court are of opinion that there is no sufficient reason to overturn the cases of Reeves v. Harris, and Bailey v. Jennings; and that the plaintiff, on principle and authority, is entitled to retain his verdict.
The motion for a new trial is refused.
David Johnson, J. Johnston, Donkin, Chancellors; Richardson and Evans, Justices, concurred.