## DIBBLEE a. CORBETT.

*New York Superior Court, General Term, May*, 1859.

CAUSE OF ACTION.—CONTRACT.—MEASURE OF DAMAGES.—
COMPLAINT.

The purchasers in a contract of sale of personal property, after neglecting for a period to execute the contract, finally took possession of the property and paid for it.

   *Held,* that the vendors might still maintain an action against them for damages sustained by them, by reason of the neglect to remove the goods.

The subsequent performance of a contract, after a breach not sufficient to author-

Dibblee a. Corbett.

ize the aggrieved party to rescind, does not preclude his action for damages for the breach.

Of the measure of damages in such action.

That letters relied on as embodying a contract should not be set out in the complaint in an action for the breach of such contract.

This was an appeal on behalf of the defendants from a judgment entered against them in favor of the plaintiffs for $340.39 damages and costs upon a verdict.

The cause was tried before Mr. Justice Woodruff and a jury. A motion to dismiss the complaint was made before the evidence was gone into, and denied, and an exception taken.

Various exceptions to the ruling of the judge as to evidence were taken during the trial, which are hereafter noticed.

When the plaintiff rested, the motion to dismiss the complaint was renewed, and again denied. Testimony was then given by the defendants. The judge charged the jury, and to each proposition of his charge, the defendants' counsel separately and specifically excepted. The jury found a verdict for the plaintiffs for $196.85 damages.

The complaint stated as a cause of action, that about the 2d day of August, 1856, the plaintiffs sold to the defendants certain goods then on board the schooner F. A. Godwin, 1265 barrels of rosin, that they agreed to deliver, and the defendants agreed to receive the same on the arrival at the port of New York of the said schooner; that said schooner did arrive on the evening of the 5th day of August, 1856; that the plaintiffs tendered the goods, but the defendants refused and neglected to take the same until the 15th day of August.

That in consequence of such neglect and refusal, the plaintiffs were obliged to stow and keep the said goods on board the said schooner at a great loss and expense to them; and that such loss and damage amounts to $200, for which sum they demand judgment.

The defendants in their answer deny any agreement to receive the goods on the arrival of the schooner; they aver that on her arrival they were willing to accept the goods, but in consequence of a purchase by them of other goods of the plaintiffs on board a certain other schooner, the defendants with the consent of the plaintiffs, first received the last-mentioned goods.

They say that the goods could not be received from both

schooners at the same time, and, therefore, the delay complained of occurred, but without their fault; that as soon as the goods could be received, they were received, and after they had accepted them, they paid and satisfied the plaintiffs therefor.

They further set up a custom, as to which no evidence was given, and which need not be further noticed.

Proof was given of the contract to sell and deliver the rosin, and that the defendants were to receive it on the arrival of the vessel; of the time of her arrival; of notice thereof given to the defendants; their directions where to send her; of the employment of men by the plaintiffs to discharge her; and notice of the same being given to the defendants; the period of her finishing the discharge, the 15th of August; and of the time usually necessary for this purpose, being from two to three days. Evidence was also given of the delay and neglect of the defendants to receive the rosin, and of the amount of expense or damage sustained for the period of such delay.

Between the 20th and 28th of August, the rosin was paid for in full by the defendants, having been all received before that time.

The broker's note of sale was as follows:

"NEW YORK, August 2, 1856.

"Messrs. Dibblee & Bunce.   Sold for your account to Messrs. Corbett & Co., 1265 barrels common rosin 1.55 per 310 bbls. delivered afloat, and ½ weighing 1c. per bl. to arrive per schooner F. A. Goodwin.

"EDWARD CARTWRIGHT,
"Broker in Naval Stores.

"Cash brokerage, 1c. per bbl."

The charge of the judge involves the main points of the case, and was as follows:

"That it was the duty of the defendants under these contracts to be in readiness to receive the goods upon notice that the vessel had arrived in port, and of plaintiffs' readiness to deliver, and if the defendants desired the delivery of the goods alongside any particular vessel, then it was their duty on receiving

Dibblee *a.* Corbett.

notice of arrival to designate the place to which the schooner should be taken for the purpose of the discharge ;

" That it was the duty of the plaintiffs to notify the defendants that the schooner was ready to deliver the goods, and to be in readiness to discharge them from one vessel to the other.

" That it was the defendants' duty to attend to the reception of the goods, and to receive them within a reasonable time.

" That it does not excuse the defendants for delay in receiving the goods, that their vessel was not in readiness to receive them. If the defendants designated the Valley Field as the ship to receive the goods, and that vessel was not ready, it was their duty to find another, or receive the goods at some other place.

" That the plaintiffs should not be compelled to wait beyond a reasonable time, because the defendants' vessel was not in readiness to receive the goods ; that it was not the plaintiffs' fault that the defendants' vessel was not in readiness, but the defendants' misfortune only.

" And that the defendants are responsible for whatever damages the plaintiffs necessarily sustained by reason of an unreasonable delay of the defendants in receiving the goods.

" That if two cargoes came in at the same time, the defendants have a right to proceed and discharge one vessel first, and then to discharge the other. This is reasonable.

" That the defendants' counsel are right in saying that it is the plaintiffs' duty to present their vessel in readiness to discharge the cargo.

" That the rule of damages in this case does not depend upon the charter party of the schooner, but the plaintiffs are to have simply the necessary expenses of taking care of the property, and keeping it during the period of unreasonable delay, and nothing more can be recovered.

" The necessary expenses incurred during the period of the delay, beyond a reasonable time to receive the goods, is the rule of damages, and it is not necessary for the plaintiffs to show that the money has been actually paid by them before suit, but it is sufficient to show that the expenses have been necessarily incurred."

To each and every of which propositions of said charge, the

defendants' counsel did then and there separately and specifically except.

And the judge further charged the jury :

" That the plaintiffs cannot recover demurrage; they were not bound to keep the schooner here, and the defendants cannot be affected by any contract between the plaintiffs and the owners of the schooner, entitling such owners to demurrage."

The jury found for the plaintiffs, assessing the damages at $196.85. Judgment was entered, and the present appeal taken.

*Mr. Hayner,* for appellants.

*Mr. W. E. Curtis,* for respondents.

By the Court.*—Hoffman, J.—The contract between the parties clearly imported that the defendants should be prepared promptly to take the rosin from the hands of the plaintiffs, upon their being apprised of the arrival of the schooner, and upon the plaintiffs following their directions, as to the place of delivery, and using proper diligence in facilitating the discharge and reception of the goods.

Under the charge of the judge, the jury have in effect found that the plaintiffs were faultless, and the defendants negligent.

It is perfectly settled that it is the duty of the vendee to take the goods within a reasonable time, or he will be liable to the vendor for warehouse rent, and other expenses growing out of the custody of them, or even to an action for not removing them in case the seller is prejudiced by his delay. (*Story on Sales,* 404.)

It is insisted by the learned counsel of the defendants, that this rule is only applicable when a sale is so perfected, as that the property has passed to the vendee, and possession remains in the vendor.

If it were necessary in order to support the plaintiffs' claim and the verdict, that such a transfer of property should be made out, our impressions would be, that the right of property did actually pass upon the arrival of the schooner, so that in Eng-

---

* Present, Hoffman, Woodruff, and Pierrepont, JJ.

Dibblee *a.* Corbett.

land, under an act of bankruptcy the goods would pass to assignees, they paying the price ; and so that the defendants could sustain trover for them against others. The weighing of the rosin under this contract may have been as much intended to be done by the purchasers, as by the sellers. (See *Ross on Vendors*, 32 ; *Law Library*, vol. xii., 17, and cases cited ; Ward *a.* Shaw, 7 *Wend.*, 404.)

But whether this is so in all respects or not, when the defendants completed the purchase, took the rosin, and paid the price, they may be treated as purchasers and owners from the date of the contract, which they acted under and fulfilled. When they began to unload, and take the rosin about the 11th day of August, the title then at least became vested in them as owners, &c., from the time of the contract. They could have recovered any advance of price beyond the amount to be given as fixed on that day. They claimed to be owners, and got the property by virtue of this contract ; and then by relation for the purposes of this question at least they must be treated as owners from its date.

Now, if a buyer's neglect of this character does not entitle the seller to put an end to the contract (3 *Camp. R.*, 427), he has no redress for the injury done him, and expenses incurred by him through the purchaser's fault, but by an action of this nature, and to hold that the subsequent performance of the bargain which he could not prevent, shall rob him of this redress, would be a conclusion as manifestly unjust as we think it is untenable.

There is nothing before us on which we can pass upon the question of an excess of damages.

The observations above made dispose of the motion to dismiss the complaint, which were made before the plaintiff had given evidence, and were reviewed upon his resting.

The copy of the plaintiffs' letters to the defendants upon the subject of the vessel's arrival, and urging a prompt discharge, were given in evidence after an admission of a notice to produce the originals. The admission was excepted to. On what ground we are at a loss to understand. No point as to this admission is now made. To have set these letters out in the complaint would have been pleading matters of evidence.

The same remarks apply to the admission of the conversation

of the witness with the defendants, upon the same subject of the discharge of the rosin.

The exceptions as to the inquiry what would be a reasonable time for discharging the rosin, are clearly untenable. Those as to the expense of keeping the rosin and schooner, are equally so.

The judgment must be affirmed, with costs.

---

## PHELPS a. FERGUSON.

*New York Superior Court; Special Term, September,* 1859.

PLEADING.—COMPLAINT ON NEGOTIABLE PAPER.—FRIVOLOUS DEMURRER.

The complaint against the acceptor of a bill of exchange, alleged the drawing of the bill, describing it, a delivery of it to the payee, "who then and there indorsed it, and delivered it so indorsed; and thereafter and before maturity the same came lawfully into the possession of these plaintiffs for value," that it was accepted, but "the same, is past due and wholly unpaid, and the defendant is now justly indebted to these plaintiffs thereon in the sum of," &c., without any allegation that plaintiffs were partners, or that they were owners and holders of the bill.

*Held,* sufficient on demurrer.[*]

---

[*] GREENBURY a. WILKINS (*New York Common Pleas; Special Term, April,* 1858).

Motion for judgment on the pleadings.

HILTON, J.—The complaint in this action is upon a promissory note, dated May 10, 1857, made by the defendant to the order of the plaintiff.

The note is set out in full, and the complaint then concludes with an allegation "that there is due thereon from the defendant to the plaintiffs, the sum of $308.20, with interest," &c., for which judgment is demanded.

The defendant has demurred generally, upon the ground "that the complaint does not state facts sufficient to constitute a cause of action."

The plaintiffs move for judgment on account of the frivolousness of the demurrer, and it is claimed that the complaint does not sufficiently show the plaintiff's right to sue; also, that the note, being dated on Sunday, is void.

The demurrer is clearly frivolous.

1. A complaint in this form is expressly authorized by the Code. (*Code,* § 162.)